We'll hear argument now in the case of United States v. Rose. Mr. Holler. Good morning, Your Honors, and may it please the Court, David Holler on behalf of the United States. Title 18 United States Code Section 922G4 is constitutional as applied to Defendant Rose. In concluding to the contrary, we believe that the District Court made essentially three errors. First, the Court demanded production of a historical American law that looked enough like the contested modern regulation. Rahimi, and we believe also Gay, stand for the proposition that that was incorrect. In addition, the Court stated that the Defendant was denied the ability to demonstrate his mental fitness for a firearm possession under Indiana law. That, too, was incorrect. He was not denied writing a statement by a court following completion of a statutory process. It is not even clear that the Noble County Court understood that the Defendant was filing. Let me interject and tell you what my main worry is about your line of argument, which really deals with both of the themes you've just articulated. And that is that you think that the Constitution allows a burden to be put on the potential person buying a firearm. If you look at Rahimi, it seemed to be very important to the Supreme Court in Rahimi that the burden was on the State or the complainant to show current dangerousness. You seem to be saying, well, no, we can shift the burden to somebody who's ever had a civil commitment to show the absence of dangerousness. It's very hard to get that out of Rahimi. Is there some way to get that burden shifting out of the historical precedence? Well, Your Honor, I guess what I would state is that if we go back, even back to Heller, as well as to Rahimi. No, no, no, no, no. I'm asking about either Rahimi or the historical antecedents of statutes like this. So the historical antecedents of statutes like this is that there were categories of people who were deemed to be sufficiently dangerous. Who were deemed to be sufficiently dangerous. I understand that. Let's assume that a person who has just been acquitted on grounds of insanity of murder with a dangerous weapon is in that category. There's no doubt that this statute is constitutional on its face. It's got lots of valid applications. What I'm trying to hone in on is if you have somebody who was in a mental institution ten years ago and has been released, is it permissible to throw on him the burden of showing lack of dangerousness? Because that's what the Indiana statute does. And by clear and convincing evidence to boot, right, that's where I'm asking you to focus your attention. Are there historical precedents for that? Well, what we would state, Your Honor, is that the historical precedent is, in the context of mental illness, is that individuals who were deemed dangerously mentally ill would be imprisoned, would be deprived of firearms. And then there was nothing at that point? It's not the problem here. We have somebody who was in a mental institution some time ago, has been out, and says, I am harmless now. Maybe true or false. But the Indiana process, I'll say this for the last time, requires him to prove it to the satisfaction of state officials by clear and convincing evidence. In other words, it's a form of may-issue scheme. And the Supreme Court in Bruin distinguished may-issue schemes from must-issue schemes. We've got a may-issue scheme in Indiana. How is that lining up with the Supreme Court's precedent? That's what I'm trying to get you to discuss. Okay. So, again, once a person was institutionalized, they had no, there were no standards or procedures for them to get out of the institution in the first place. So they could be institutionalized forevermore. There wasn't a specific procedure for them to demonstrate that they were no longer dangerous. They have categorically demonstrated that those people are more dangerous. Congress in 1968 essentially stated, we believe as a category, that people who have been mentally institutionalized are dangerous individuals and present a sufficient danger, and therefore those people can be deprived. That is what the procedure is. But I would also point out that the defendant... I understand that that's the statute, but you're not dealing with my question. I'm not sure I know how better to deal with that question other than what we have stated. In what way is Indiana's system of restoring rights for somebody who has been in an institution different from the May issue permit system that issued in Bruin? Both procedures require a... Require the person who wants to have a firearm to show to the satisfaction of state officials that he's a good guy and entitled and should be entitled. That's why the system in Bruin was held unconstitutional. Well, that particular scheme required the defendant to show a special need to possess a firearm, not to show that they were not dangerous. It was on the applicant. The fundamental holding of Bruin is that May-issue systems are invalid, but must-issue systems subject to conditions are valid. And as I say, Indiana appears to have a May-issue system for anybody who's ever been in a mental institution. Am I missing something? I think that the difference between Bruin and this case is that I don't believe that Bruin holds that if a system says you may issue the firearm, only if there is a showing that you are not dangerous is unconstitutional. It doesn't speak to that question. It's crystal clear in Bruin that that's unconstitutional. Crystal clear. You can't read the decision any other way. No May-issue systems are out after Bruin. The defendant has to make some showing that they are not dangerously mentally ill. They have to make that showing. But that's the question. You're shifting the burden after Bruin and Rahimi in particular, where it's clear from the Supreme Court that people have a right to bear arms under the Second Amendment. And the question, going back to the original question Jester Easterbrook posed, was where in the historical precedent of the country have we required, in particular those that have been deemed mentally ill at some point, to require them to show that they're no longer perceived to be a danger to be able to now acquire firearms? This May-issue shifting that burden to, in this case, Mr. Rose, versus the government having to demonstrate not being entitled after that involuntary commitment is over, not being entitled to go out and grab a gun. The historical precedent is that when people were deemed dangerously mentally ill, they were confined in prisons or in mental hospitals. And then if at some point the state believed that they were no longer dangerous, then at that point they were released and could have a firearm. There is no evidence that there were the same sort of due process standards that now exist back in the 1790s. There's no evidence that the state can say, eh, we're not convinced, we're not going to release you. Those due process burdens came in place in the 1970s in O'Connor versus Ellison and those decisions. I don't think you're even grasping the problem. The historical precedents are along the lines of, if you were dangerously mentally ill, you can't have a firearm. The question then, based on the historical antecedents, is, is Rose dangerously mentally ill now? What we know is he was once in a mental institution. We know that he is not shown by clear and convincing evidence that he is not now mentally ill. What do you do about states of uncertainty? The historical record doesn't seem to deal with states of uncertainty or with who bears the burden of showing dangerousness or lack of dangerousness. In Rahimi, there was a burden that had already been discharged of showing that Rahimi was dangerous right now. That was the foundation of the Supreme Court's holding in Rahimi. But what's the basis for thinking that Rose is dangerous now, today? So the basis for thinking that Rose is dangerous now, today, is the data that was established, which shows that people, even after release from mental institutions, present a danger of violence and present a much greater danger of violence than ordinary society. And I respectfully, Judge Easterbrook, I do not read Bruin, which applies to people who have never demonstrated such a danger, to suggest that those same kinds of regimes and some kinds of additional requirements may not be placed on people who have not already demonstrated that they present a danger. The most recent question on the table is, what is the reason for believing that Rose is dangerous today? We knew the answer to that question in Rahimi. What is the reason for giving an affirmative answer to that question with respect to Rose now? So there is sparse evidence in the record because this was decided on a complaint and a motion to dismiss. Why isn't the answer just his commitment to the mental institution at some point in the past? Well, that is essentially what we can rely on at this point, is the commitment to the mental institution. And then to state, whatever, whether this was a...  Well, I guess my point would be, let's assume for the sake of argument that Indiana had a shall issue regime and that when Mr. Rose filed his application with the Noble County Court, the Noble County Court misunderstood it. He still has the burden to go through the state procedures and challenge those state procedures as unconstitutional. Why? Because the statute has... There still is, even in the Bruin context, Your Honors, the court still said that shall issue regimes are permissible. You still have to go and state, I would like a firearm. There's nothing wrong with that minimal burden. So that sort of procedure, at minimum, would not be unconstitutional in light of any Supreme Court precedent. We're looking at the finding of fact that the judge made in that initial order for Mr. Rose, that there was a factual finding that Mr. Rose, at the time, was a danger. And for that reason, you're involuntarily committed. He was involuntarily committed in 2009 based on a finding of dangerousness. So then the question becomes, at what point and how do we determine that he is no longer a danger? That's the question. And I don't know that there's... no historical principles that said that there were any minimal standards to determine that position. That simply is not present in the record. People were placed into mental institutions, and many of them remain there long after they should have because there were no standards for their release. This is why the mental institutions were emptied in the 1970s after the Supreme Court and other courts started reviewing these issues more closely. So in the 1790s, once a determination had been made that Mr. Rose was mentally ill and dangerous, there's no reason to think that he ever would have been released. Perhaps he would have been, perhaps he would not have been. But I don't think based on that historical record that one can conclude today that he is not mentally ill. The way to conclude that is the way the statute provides, and he did not follow that procedure. I would like to reserve the remainder of my time for rebuttal. Certainly, counsel. Mr. Pennington. Your Honor, good morning. May it please the Court? Chad Pennington on behalf of Mr. Rose. To go directly to your question, Judge Easterbrook, there is no historical antecedent that functions in the same way as 922G4 did in this particular case. There is no history and tradition from the requisite period, which is the time of the founding, that establishes that a person once released... Let's assume that's true. Does that decide the case in your favor? The United States says, this is page 29 of its brief, that when Rose bought his guns, he was receiving Social Security disability payments based on current mental illness. Not mental illness 10 years ago, but mental illness at the time he bought his guns. Why isn't that all the prosecution needs? Your Honor, I think it's not enough for the prosecution, if we look at Rahimi specifically. If he's receiving state benefits of some kind, based on some sort of mental defect or mental impairment, whatever it may be, however one has to be characterized, that doesn't establish the requisite level of dangerousness. And what Rahimi is specifically alluding to is dangerousness, and an act defining that. The prosecutor cites the receipt of Social Security benefits. Now, I could imagine a response along the lines of, Rose applied for benefits on the ground of being unemployable, because people wrongly thought he was dangerous, but he's not. But you didn't respond along those lines. In fact, you completely ignored the issue. Well, now is your chance to respond. If we go and look at the Social Security record, is that what we'll find? Your Honor, I don't know exactly what we'll find if we go to the Social Security record. It's an oral argument in the Court of Appeals, it's a little late to say, I don't know what we'll find about an issue raised by the prosecutor as a reason for putting Mr. Rose in prison for a very long time. Your Honor, I think our response would be that the case law under Rahimi is that the deprivation is permissible if there's an active finding of dangerousness, and a Social Security disability as it relates to... Well, for all we know, Rose told the Social Security Administration that he was uncontrollably violent, and that's why he can't be employed. And the Social Security Administration bought it. The terms of disability benefits require you to notify SSA just as soon as anything changes. And I take it from the prosecutor's reference that Rose has never told the Social Security Administration that he is no longer disabled, mentally disabled. You think that's a problem, if that's what he told the Social Security Administration? You think there's a problem preventing him from having guns? Your Honor, to address the question specifically, I think in the absence of a record about what exactly he told the Social Security... Well, then, that's a problem. How do we hold the statute unconstitutional in the absence of a record on an absolutely critical question, which is whether Rose is dangerous today? Your Honor, I think the absence of the record on the as-applied challenge, that's going to redound in Mr. Rose's favor. The person bearing the legal burden on a constitutional challenge to a statute is the challenger, not the United States. Your Honor, under the Second Amendment... You have been challenged by Mr. Holler with the fact of the Social Security disability benefits, and you have chosen to ignore that challenge. It's not something that you can then say to the Court of Appeals, well, we ignored it, so we win. No, it doesn't work that way. Your Honor, I wouldn't say we're ignoring it. I'm saying it's not a controlling fact. You did ignore it. You were asked about that. It's relied on by the United States, and your brief doesn't mention the topic. Your Honor, because I don't think that the reliance is permissible, and that's the fundamental flaw with saying we're going to rely on some...  We need, you know... My best reading of Rahimi, maybe it's not yours, maybe it's not Mr. Holler's, is that a showing of current dangerousness is important, right? The prosecutor says one reason to believe that Rose is dangerous today is his ongoing receipt of disability benefits based on a mental impairment, and Rose says nothing in response. Well, if you leave a critical argument like that unanswered, what's the court supposed to do? Your Honor, I think that there's other portions of the record that can be cited to, which is specifically, as Judge Kirsch was alluding to, is that he was released from the mental facility, and the government makes a big... But does that remove the finding of dangerousness under involuntary temporary commitment? But neither party engaged with the statute that says the limit is 90 days. So irrespective of the 90 days after that ran, you were to be released. And so are you suggesting because he was released, there was a finding that he was no longer dangerous? Your Honor, what I'm saying is if he was released, there was either a finding that he was no longer dangerous, or the Indiana officials chose not to extend the commitment. Either way... But you're the one raising the as-applied challenge, so where do I go to get the answer to that question? Your Honor, I would say specifically when it comes to the nature of the challenge, the question is not Mr. Rose's exercise of the right. It's he has the right. It's a pre-existing right. The question is the government's deprivation of that right, and whether the deprivation is rooted in history and tradition. And specifically when we're saying here in this... When we have a history and tradition of restricting categorically firearms from those that are deemed to be dangerous, and we have a finding in the record that Mr. Rose poses a danger. Your Honor, I would say that the case law is... When you look at history and tradition pursuant to Rahimi, it's based on that particular statute, addition 922G8, it's what's critical is the credible active finding of dangerousness. That was existing in the Texas protective order. Here he was committed in 2009. It was extended into early 2010. And then what we know from the record with absolute certainty is the commitment ended. And that's much different than Rahimi, where the actual disability was still in place. And so Congress's authority to strip the person... But you're trying to attach the 90 days running to undoing the finding of dangerousness. And so I'm needing support in the record to get me there. I understand your argument, but now I'm asking for the support for the argument. Your Honor, I would say the support for the argument, that he's no longer dangerous as understood in Rahimi, is he is... No, going to the record. That's why Judge Easterbrook is bringing up the disability filings. That's why he's bringing up the record. Your Honor, correct. I think what, as the state of the record is currently, what we have is that he was released, and that's what we would point to. Whether the release is based on a finding of whether he was or wasn't... So we don't know anything about why he was released? I think, Your Honor, we know that he was released. We know that he was released. And we know... But we don't know why he was released. We know why he was committed, and we know that the commitment ended, and the commitment was related to... We don't know why. If you think that the record shows why, please tell me, because it's important. Do you think the record shows why he was released? Your Honor, I think that the record shows... It doesn't show specifically why he was released. So the answer is no. We've now got two unsettled problems. We don't know why he was released. We don't know why he is still receiving disability benefits based on a finding of some mental problem. How do we get a constitutional decision out of that as applied when there are still important things we don't know? Your Honor, I think that what we're doing here is we're trying to decide whether to affirm the district court's decision or not. And the district court made a decision that the government hadn't proffered sufficient history and tradition. And I think that when you look at the record that was presented before the district court... The history and tradition, I think, is pretty well established. The people who are currently dangerous for mental reasons can't possess firearms. There's a history. If that's what G4 is saying, fine. But how do you hold that statute unconstitutional as applied to Rose when we don't know whether Rose is currently dangerous? Your Honor, I think that we... I don't think the record supports that he is currently dangerous. It doesn't say one way or the other, so far as I can tell. I think in the absence of saying that it doesn't show that he's currently dangerous, I don't think the government can establish that he's currently dangerous. It might have to establish that in order to get a conviction. But how do we hold the statute unconstitutional as applied to Rose when we don't know whether Rose is currently dangerous? Your Honor... If we knew he's currently dangerous, then it's valid to apply it to him. If we think he's currently not dangerous, then it's not proper to apply it to him. But if we don't know the answer, how do we get a constitutional decision? That's my problem. Certainly, Your Honor. I think that if we don't know the answer specifically, what we do is, on a motion to dismiss, is we look at the record that's been presented, and that's through the complaint and that's through the indictment. We know that he was committed for roughly a 90-day period in 2009 and was extended once, so roughly 120 days of commitment. That was in 2009. That was in 2010. He subsequently assumed employment. He's also receiving disability benefits. But we don't... You're not addressing my question, which is how, if the validity of this statute as applied to Rose turns on whether he is currently dangerous, how can we tell whether the statute is valid as applied to Rose when we don't know whether he is currently dangerous? I think, Your Honor, there's enough in the record to make the inference that he is no longer dangerous. This happened, the commitment, almost 15 years ago at this point. It's entirely distinguishable from Rahimi where the person was under an act of disability. There was an act of finding of current dangerousness. He is actively receiving Social Security disability benefits based on his own representation that he has an ongoing mental illness. You want us to ignore that. You've got your head in the sand about that. But it's there. It's not going away. We're not asking you to bury your head in the sand. We're asking you to look at the record that was presented. No, you didn't ask us to look at the record. You simply ignored the issue. Your Honor, we're trying to connect the issue as you present the question to Rahimi. And what we're talking about in Rahimi is whether there's the act of finding of dangerousness. And if there is, then the government can deprive the Second Amendment right. We don't have the same act of finding of dangerousness here to the extent we had one as it relates... That's what the statute, G-4, says, involuntary commitment. And involuntary commitment in Indiana, as applied to Mr. Rose, in order for that to happen, there must be a finding of dangerousness. We have that here. That's correct, Your Honor. We're away from Rahimi now, and we're trying to, as applied to Mr. Rose, if there's still a... Today, is there still a reason to believe that Mr. Rose is in the category of dangerous people? No, Your Honor, I don't think that there is a reason to believe that he's in the category of those persons. The government cited in its brief prior conviction in 2013. That's now been expunged, and that's over 10 years ago at this point. Since he's been released, there's no criminal conduct in place. There's the receipt of benefits, but there's nothing evincing the level of dangerousness that was talked about in Rahimi, where there was an active finding of dangerousness. How can you say that when we know nothing about the Social Security benefits? If Rose himself represented to the administration that I am dangerous, and that's why I'm unemployable, and he's under a statutory duty to tell them immediately if anything changes, we can't ignore that. Your Honor, I think that there's nothing in the record about what he communicated. There's nothing in the record about it. The prosecutor says he's receiving benefits, and the defense chooses to ignore the subject. The person who has the records is your client. Your Honor, we're at the motion-to-dismiss phase, and so the record is the complaint, the record is in the indictment, and that's what the judge ruled upon. And in those specific documents, where the government carries the burden to deprive him of his Second Amendment rights, there's nothing in the complaint establishing his active level of dangerousness, and that's the record that the court relied upon in granting the motion-to-dismiss. Given the state of the record that was presented, I think the court was competent here to say the record was sufficient. He's not an active dangerousness, and I think what the court was specifically saying is he's not laboring under an active mental illness. Just because he's saying there could be some problem to get Social Security benefits, I'm struggling, I'm not well, that's a far cry from necessary mental illness. He does have the prior adjudication, certainly. But his receipt of benefits, I think it's just entirely a red herring. That doesn't establish that he's currently suffering from a mental illness or that he would be committable. It certainly establishes that he is suffering today from a mental illness, because he has a statutory obligation to tell the Social Security Administration immediately if anything has changed. Failure to do that is both a civil wrong and a felony. And your client has never told the Social Security Administration that he has recovered. That's the problem. I don't think you're seeing the problem. Your Honor, I think we're seeing the problem. I'm trying my best to explain it to you, but I see the issue. I think what is critical here is the record that was presented to the court through the complaint, through the indictment, that doesn't establish that he's under an active level of dangerousness or has been an active finding of dangerousness. And with the evidence presented, the district court was competent to make a ruling that it did. And for those reasons, we would ask that this court affirm the district court's finding that 922G4 is unconstitutional and supply the defendant. Thank you. Thank you, Mr. Pennington. Anything further, Mr. Haller? Very briefly, Your Honor. First, on the factual points. Every fact in this record is either in the criminal complaint, which is attached to Appendix Page 12, or it is in Docket Entry 9, which is the discussion of the mental health issue. And I'm not going to read that word for word, but it reports that he was diagnosed with some pretty significant mental issues in 2008. And it reports, quote, the defendant currently received social security disability benefits and advised he received said benefits due to his prior mental health diagnosis. Under that prior mental health diagnosis, in 2009 and 2010, he was institutionalized as dangerous. At least at the motion to dismiss stage, there is enough in this record to conclude that this indictment should not have been dismissed. Respectfully, Your Honors, we believe that the Supreme Court's opinion in Rahimi and Justice Gorsuch's concurrence in particular suggest that the Supreme Court has not decided definitively the question of, first of all, whether dangerousness is required, and second of all, whether the government is required to give a temporal limitation to dangerousness or to review that. We believe that is an open question. The court can certainly read the tea leaves in whatever way it wishes to. The government reads it differently. But I believe, at minimum, the court should concede that the Supreme Court has not definitively stated that. I'm happy to answer any other questions from the court. Otherwise, I'd like to be respectful of your time, and I thank you for that. We would ask that the judgment of the district court be reversed, and that the case be remanded for further proceedings. Thank you. Thank you, Mr. Holler. The case is taken under advisement, and the court will take a brief recess before calling the fourth case.